FORTUNE *v.* RESHETYLO, SUPT.

(No. 72-702—Decided March 14, 1973.)

*Mr. M. Claude Sharf*, for petitioner.

*Mr. William J. Brown*, attorney general, and *Mr. Jeffrey L. McClelland*, for respondent.

STERN, J. The primary issue is whether a finding that a defendant who previously was committed to Lima has been sufficiently restored to reason so that he is capable of standing trial is sufficient to overcome the statutory presumption of continuing insanity resulting from a trial court's finding of not guilty by reason of insanity. We hold that it is not.

Petitioner was originally sent to Lima in accordance with R. C. 2945.40, which provides in part that:

"In any case in which insanity is set up as a defense * * * the court may commit the defendant to * * * the Lima State Hospital, where the defendant shall remain under observation for such time as the court directs not exceeding one month. * * *" It having been determined during

this period that petitioner was then legally insane, it was proper for the court to commit him to Lima indefinitely until such time as he was sufficiently "restored to reason" (R. C. 2945.38), so that his trial could continue.

The April 1971 finding by the Superintendent of the Lima State Hospital, holding that petitioner had a "remission from his psychosis" and was able to stand trial, constituted nothing more than a finding that he had been "restored to reason." The sole issue determined at that stage of the proceeding was "whether the relator is of sufficient soundness of mind to understand and appreciate the nature of the charge against him, to comprehend his situation, and whether he is mentally capable of furnishing his counsel the facts essential to the presentation of a proper defense." *State, ex rel. Townsend,* v. *Bushong* (1946), 146 Ohio St. 271, 274.

An adjudication of not guilty by reason of insanity constitutes a determination that the defendant, at the time of the commission of the act with which he is charged, was insane (*State* v. *Staten* [1969], 18 Ohio St. 2d 13), and such insanity is presumed to thereafter continue. Such presumption of insanity is not affected by an interim finding that the defendant was sufficiently restored to reason so as to be able to stand trial.

Therefore, upon conclusion of petitioner's trial and a determination of not guilty by reason of insanity, the statutory presumption that such insanity has continued from the time of the crime attaches immediately, and the court has the duty to direct that the accused be confined to Lima "* * * until the judge of the Court of Common Pleas of Allen County, the Superintendent of the Lima State Hospital, an alienist to be designated by said judge and superintendent, or a majority of them, after notice and hearing, find and determine that said defendant's sanity has been restored, *and that his release will not be dangerous.*" (Emphasis added.) R. C. 2945.39.

It is evident that a lesser degree of sanity is required by R. C. 2945.38 than that required by R. C. 2945.39. Under the former, the defendant need only be "restored to

reason" so that he may stand trial, whereas under the latter, it must not only be determined that his "sanity has been restored," but, additionally, that his "release will not be dangerous."

Inasmuch as the presence of a mental illness does not necessarily mean that one is mentally incompetent to stand trial or to waive his right to a jury trial, likewise, the mere ability to assist counsel in the preparation of one's defense does not necessarily indicate that such person would not be dangerous if released to society. It is a proper responsibility of the courts that they safeguard the public from the possibility that the defendant might, due to his mental condition, conduct himself in a criminally unacceptable manner again. (See *Lynch* v. *Overholser* (1962), 369 U. S. 705.)

Petitioner cites the syllabus of *Collins* v. *Campbell* (1965), 4 Ohio App. 2d 42, which provides:

"Section 2945.39, Revised Code, does not provide an exclusive method for the release of one acquitted on the sole ground of his insanity at the time of a commission of a criminal act. If such person is *declared* sane at the time of trial, the presumption that such insanity continues has been overcome, and he may have *recourse* to the writ of habeas corpus to secure his release from a commitment to the Lima State Hospital." (Emphasis added.)

In this case there was no such declaration that the petitioner was sane at the time of trial; and the previous finding that he had been restored to reason did not constitute such a declaration.

Absent a finding and determination by those persons named in R. C. 2945.39, *supra*, that the petitioner satisfies the statutory conditions of release, petitioner lacks grounds for release under this writ of habeas corpus.

We hold that the finding, that a defendant has been sufficiently returned to reason so as to enable him to stand trial, is not itself adequate to overcome the attachment of the statutory presumption of continuing insanity which results from a judgment of not guilty by reason of insanity.

**26**

Petitioner's second cause of action attacks the constitutionality of R. C. 2945.39. As stated in *Harley* v. *Alvis* (1957), 167 Ohio St. 48, 49: "A proceeding in habeas corpus will not lie to test the constitutionality of a statute in favor of one who has been convicted, where the court in which the conviction was obtained had jurisdiction to determine the question of constitutionality."

Petitioner's writ of habeas corpus is denied.

*Writ denied.*

O'NEILL, C. J., HERBERT, CORRIGAN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.